IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANTONIO SANCHEZ,

        Plaintiff,

     v.                                   No. CIV-14-0779 LAM

CAROLYN W. COLVIN, Acting Commissioner
of the Social Security Administration,

        Defendant.

# MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's *Motion to Reverse and Remand for a Rehearing, With Supporting Memorandum (Doc. 15)*, filed April 29, 2015 (hereinafter "motion"). On July 27, 2015, Defendant filed a response to the motion [*Doc. 19*], and, on August 12, 2015, Plaintiff filed a reply [*Doc. 20*]. In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to the undersigned United States Magistrate Judge to conduct all proceedings and enter a final judgment in this case. [*Docs. 4* and *7*]. The Court has considered Plaintiff's motion, Defendant's response, Plaintiff's reply, and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. [*Doc. 12*]. For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **GRANTED** and the decision of the Commissioner of the Social Security (hereinafter "Commissioner") should be **REMANDED** for further proceedings consistent with this Memorandum Opinion and Order.

## I. Procedural History

On January 21, 2011, Plaintiff filed an application for Disability Insurance Benefits (hereinafter "DIB") alleging that he became disabled on April 16, 2009. [*Doc. 12-6* at 6-12]. Plaintiff stated that he became disabled due to: back problems, hernia, knee pain, anxiety, bipolar, nerve damage in his leg, slight heart attack, and heart murmur. [*Doc. 12-7* at 7]. The application was denied at the initial level on June 1, 2011 (*see Doc. 12-5* at 6-9), and at the reconsideration level on December 21, 2011 (*id.* at 10-12). Pursuant to Plaintiff's request (*id.* at 14), Administrative Law Judge Myriam Fernandez (hereinafter "ALJ") conducted a hearing on November 14, 2012. [*Doc. 12-3* at 33-65]. At the hearing, Plaintiff appeared, was represented by a non-attorney representative, and testified (*id.* at 35-57), and Vocational Expert (hereinafter "VE") Shawn Hardiman appeared and testified (*id.* at 35, 58-64).

On January 25, 2013, the ALJ issued her decision, finding that, under the relevant sections of the Social Security Act, Plaintiff was not disabled. [*Doc. 12-3* at 18-32]. Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 8), and, on June 27, 2014, the Appeals Council denied Plaintiff's request for review (*id.* at 2-6), which made the ALJ's decision the final decision of the Commissioner. On August 27, 2014, Plaintiff filed his complaint in this case. [*Doc. 1*].

## II. Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's

2

decision stands, and the plaintiff is not entitled to relief.  *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted).  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted).  While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III. Applicable Law and Sequential Evaluation Process

For purposes of DIB, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 404.1505(a).  In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim.  20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the SEP, the claimant has the burden to show that: (1) the claimant is not engaged in "substantial gainful activity;" and (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) the claimant's impairment(s) either meet(s) or equal(s) one of the "Listings" of presumptively disabling impairments; or (4) the claimant is unable to perform his "past relevant work."  20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.  At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity (hereinafter "RFC"), age, education, and work experience.  *Grogan*, 399 F.3d at 1261.

### IV.   Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on July 31, 1979.  [*Doc. 12-6* at 6].  Plaintiff has worked in customer service, and as a laborer, "specialist," and "temp."  [*Doc. 12-7* at 9].  Plaintiff stated that he became disabled due to: back problems, hernia, knee pain, anxiety, bipolar, nerve damage in his leg, slight heart attack, and heart murmur.  *Id.* at 7.  Plaintiff's medical records include: a Consultative Examination by Karl R. Moedl, M.D., dated April 25, 2011 [*Doc. 12-12* at 15-18]; a Physical Residual Functional Capacity Assessment by Lawrence Kuo, M.D., dated May 6, 2011 (*id.* at 19-26); a Mental Status Evaluation by Finian J. Murphy, Ed.D., dated May 13, 2011 (*id.* at 28-31); a Psychiatric Review Technique by Ralph Robinowitz, Ph.D., dated May 30, 2011 (*id.* at 33-46); a Mental Residual Functional Capacity Assessment by Ralph Robinowitz, Ph.D., dated

May 30, 2011 (*id.* at 47-50); a Medical Source Statement of Ability to do Work-Related Activities (Physical) by Adolfo V. Sanchez, M.D., dated October 29, 2012 (*Doc. 12-14* at 7-10); and medical records from Lovelace Medical Center (*Doc. 12-14* at 12-25).  Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process, the ALJ found that Plaintiff has not engaged in substantial gainful activity since Plaintiff's alleged disability onset date of April 16, 2009.  [*Doc. 12-3* at 20].  At step two, the ALJ found that Plaintiff has the following severe impairments: morbid obesity, status post umbilical hernioplasty, sleep apnea, status post left knee arthroscopy, bipolar, heart murmur, plantar fasciitis, and lumbar disc disease.  *Id.*  At the third step, the ALJ found that Plaintiff does not have an impairment or combination of impairments that met or medically equaled any of the Listings found in 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).  *Id.*

Before step four, the ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) in that he can lift and carry twenty pounds occasionally and ten pounds frequently.  *Id.* at 22.  The ALJ further found that Plaintiff can stand and walk six hours in an eight-hour workday, and he can sit two hours in an eight-hour workday.  *Id.*  In addition, the ALJ limited Plaintiff's RFC as follows: Plaintiff "must be allowed to alternate between sitting and standing at will, so long as[] he is not off task more than ten percent of the workday;" Plaintiff "can frequently balance, yet[] can only occasionally crawl, kneel, crouch, stoop, and climb ramps, stairs, ladders, ropes, or scaffolds;" Plaintiff "must avoid concentrated exposure to extreme heat, wetness, humidity, moving machinery, and unprotected heights;" and Plaintiff "can have occasional interaction with the public in person, but is not precluded from interaction via telephone."  *Id.* at 22-23.  In support of the RFC finding, the ALJ stated that Plaintiff's

"medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." *Id.* at 23. The ALJ stated that she assigned significant weight to the opinions of the state agency consultants who found that Plaintiff maintained the ability to perform a significant range of light work. *Id.* at 24 (citing *Doc. 12-12* at 15-18 and 19-26). The ALJ gave great weight to Plaintiffs treating provider, Dr. Sanchez, regarding Dr. Sanchez' opinion that Plaintiff could lift and carry twenty pounds both occasionally and frequently and could sit as long he is allowed the option to alternate between sitting and standing. [*Doc. 12-3* at 24] (citing *Doc. 12-14* at 7-10). The ALJ stated that she gave no weight to Dr. Sanchez' findings that Plaintiff could stand or walk no longer than two hours; can never climb ramps, stairs, ladders, ropes, or scaffolds; and can never crouch or crawl. [*Doc. 12-3* at 24]. The ALJ stated that she made this determination because x-rays of Plaintiff's lower back, knees, and shoulder reveal no abnormalities in spite of his weight. *Id.* (citing *Doc. 12-14* at 18 and 23-25). In addition, the ALJ assigned significant weight to the state agency consultant's assessment that Plaintiff is mentally capable of performing "simple, routine work related tasks in a normal workday/workweek without interference from psychological symptoms." [*Doc. 12-3* at 24-25] (citing *Doc. 12-12* at 47-50). At step four, the ALJ found that Plaintiff is unable to perform any of his past relevant work, so the ALJ proceeded to the fifth step. [*Doc. 12-3* at 26].

At the fifth and final step, the ALJ noted that Plaintiff was born on July 31, 1979, so he was 29 years old, which is defined as a younger individual age of 18-49, on the alleged disability onset date. *Id.* The ALJ noted that Plaintiff has at least a high school education and is able to communicate in English. *Id.* The ALJ stated that "[t]ransferability of job skills is not material to

6

the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [Plaintiff] has transferable job skills." *Id.* (citing Soc. Sec. Rep. 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2). The ALJ found that, considering Plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Plaintiff can perform. *Id.* The ALJ stated that she asked the VE "whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC]," and the VE testified that such an individual would be able to perform the requirements of representative occupations such as document preparer performed at the sedentary unskilled exertional level, and gate guard performed at the light semi-skilled exertional level. *Id.* at 27. The ALJ stated that "the [VE's] testimony is consistent with the information contained in the Dictionary of Occupational Titles," and the ALJ, therefore, determined that Plaintiff was not disabled within the meaning of the Social Security Act. *Id.*

## V.   Analysis

In his motion to reverse or remand, Plaintiff contends that the ALJ erred by: (1) failing to properly consider the opinion of Plaintiff's treating physician, Dr. Sanchez (*Doc. 15* at 15-17); (2) failing to properly consider the limitations found by Dr. Murphy and Dr. Robinowitz (*id.* at 18-20); and (3) improperly relying on the VE's testimony (*id.* at 21-25). In response, Defendant contends that the ALJ properly made her RFC determination (*Doc. 19* at 4-6), did not err in her consideration of the medical opinions of Dr. Sanchez, Dr. Murphy, or Dr. Robinowitz (*id.* at 6-11), and did not err in her step five determination (*id.* at 11-13).

### A.   The ALJ's Consideration of Dr. Sanchez' Opinion

Plaintiff first contends that the ALJ erred by failing to properly consider the opinion of Plaintiff's treating physician, Dr. Sanchez. [*Doc. 15* at 14-17]. Specifically, Plaintiff contends

7

that the ALJ erred by giving less weight to Dr. Sanchez' opinion that Plaintiff is limited to standing and walking for 2 hours, because Plaintiff contends that this opinion is supported by medical evidence in the record. *Id.* at 16-17. In response, Defendant contends that the ALJ properly discounted Dr. Sanchez' opinion by relying on x-rays that revealed no abnormalities of Plaintiff's lower back, knees, or shoulder. [*Doc. 19* at 6]. Defendant further contends that the record supports the ALJ's consideration of Dr. Sanchez' opinion because Plaintiff showed a normal gait and range of motion and received excellent sleep with the use of a CPAP machine, and because examinations of Plaintiff's heart failed to show any significant, ongoing condition, such as a heart murmur. *Id.* at 7.

When "evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011); *see also Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007). First, the ALJ "should consider whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Pisciotta*, 500 F.3d at 1077 (citations omitted). If the answer to both these questions is "yes," then the ALJ "must give the opinion controlling weight." *Id.* If, however, "the treating physician's opinion is not entitled to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight." *Id.* When a treating physician's opinion is not given controlling weight, it is still entitled to deference and must be weighed using relevant factors such as: the length of treatment and frequency of examination, and the nature and extent of the treating relationship; the extent to which the opinion is supported by relevant evidence, particularly medical signs and laboratory findings; the extent to which the opinion is consistent with the record as a whole; the doctor's specialization in the

medical field upon which an opinion is given; and other factors tending to support or contradict the opinion.  *See* 20 C.F.R. § 404.1527(c).  Although the "ALJ must evaluate every medical opinion in the record [recognizing that] the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional," ultimately, the ALJ's decision must contain "reasons that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citations and internal quotation marks omitted).

Here, the ALJ found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) in that he can lift and carry twenty pounds occasionally and ten pounds frequently.  [*Doc. 12-3* at 22].  The ALJ further found that Plaintiff can stand and walk six hours in an eight-hour workday, and he can sit two hours in an eight-hour workday.  *Id.*  In addition, the ALJ limited Plaintiff's RFC so that Plaintiff must be allowed to alternate between sitting and standing at will, so long as he is not off task more than ten percent of the workday; Plaintiff can frequently balance, yet he can only occasionally crawl, kneel, crouch, stoop, and climb ramps, stairs, ladders, ropes, or scaffolds; Plaintiff must avoid concentrated exposure to extreme heat, wetness, humidity, moving machinery, and unprotected heights; and Plaintiff can have occasional interaction with the public in person, but is not precluded from interaction via telephone.  *Id.* at 22-23.  The ALJ's RFC determination includes no limitations encompassing the opinions of Dr. Sanchez that Plaintiff cannot stand or walk for longer than two hours; can never climb ramps, stairs, ladders, ropes, or scaffolds; and can never crouch or crawl.  *See* [*Doc. 12-14* at 7-8].  The ALJ stated that she gave no weight to these opinions because x-rays of Plaintiff's lower back,

knees, and shoulder reveal no abnormalities in spite of his weight. [*Doc. 12-3* at 24] (citing *Doc. 12-14* at 18 and 23-25).

The Court finds that the ALJ did not err in her treatment of Dr. Sanchez' opinions because she sufficiently stated why she did not give weight to the opinions. While Plaintiff contends that other evidence in the record supports Dr. Sanchez' opinions, such as an MRI from October 2008, and Plaintiff's reports of right foot pain caused by plantar fasciitis (*see Doc. 15* at 16), the ALJ did not err by relying, instead, on x-ray evidence that contradicts Dr. Sanchez' opinions. Plaintiff's claim invites the Court to re-weigh the evidence that was before the ALJ, which the Court may not do. *See Hamlin*, 365 F.3d at 1214 (explaining that courts should not re-weigh the evidence or substitute their judgment for that of the Commissioner). The Court, therefore, finds that this claim should be denied.

### B.   The ALJ's Consideration of the Opinions of Dr. Murphy and Dr. Robinowitz

Next, Plaintiff contends that the ALJ erred by failing to properly consider the opinions of state agency physicians, Dr. Murphy and Dr. Robinowitz. [*Doc. 15* at 18-20]. In response, Defendant contends that the ALJ sufficiently discussed Dr. Murphy's report (*Doc. 19* at 8), and that the ALJ properly relied on Dr. Robinowitz' opinions in Section III of his assessment, which Defendant contends incorporated Dr. Robinowitz' findings of limitations in Section I (*id.* at 10).

The findings of state agency consultants are not binding on an ALJ; however, they are medical opinion evidence which an ALJ must consider, except as to the ultimate determination of whether a claimant is disabled. *See* 20 C.F.R. § 404.1527(e)(2)(i). Here, Dr. Murphy found that Plaintiff is markedly limited in his abilities to carry out instructions, concentrate, and persist at tasks due to Plaintiff's psychological problems, and he assigned Plaintiff a GAF score of 31.[1]

---

[1] The Global Assessment of Functioning (hereinafter "GAF") score is a measurement of the clinician's Continued...

[*Doc. 12-12* at 28].  Dr. Robinowitz found moderate limitations in Plaintiff's abilities to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; and set realistic goals or make plans independently of others.  [*Doc. 12-12* at 47-48].

In discussing Plaintiff's mental limitations, the ALJ did not state whether she considered any of these limitations, and, instead, stated that Plaintiff's "treatment providers have assigned no degree of limitations to him."  [*Doc. 12-3* at 24].  The Court finds that the ALJ's failure to explain why she rejected Dr. Murphy's and Dr. Robinowitz' findings regarding Plaintiff's mental limitations is legal error.  *See* Soc. Sec. Rep. 96-8p, 1996 WL 374184 at *7 (The ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved").  While Defendant contends that the ALJ's discussion of other findings by Dr. Murphy provides an adequate explanation of why she rejected Dr. Murphy's findings of marked limitations, and that Dr. Murphy's findings are only supported by Plaintiff's subjective report of his ability to carry out instructions (*see Doc. 19* at 8-9), Defendant's attempt to supply an explanation for the ALJ's rejection of these findings of limitations is an impermissible *post hoc*

---

judgment of an individual's psychological, social and occupational functioning, and should not include impairment in functioning due to physical or environmental limitations.  DSM-IV-TR at 32.  A GAF score within the range of 31-40 indicates "[s]ome impairment in reality testing or communication," or "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood."  *Id.* at 34.

11

rationalization. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (explaining that reviewing courts may only evaluate an ALJ's decision "based solely on the reasons stated in the decision," and that it would be improper for a reviewing court or the Commissioner to "supply[] possible reasons" for an ALJ's decision after the fact) (citation omitted).

In addition, Defendant contends that the ALJ did not err by failing to account for Dr. Robinowitz' findings of moderate limitations in Section I of the Mental RFC Assessment because the ALJ properly relied on Dr. Robinowitz finding in Section III that Plaintiff "can perform simple routine work-related tasks in a normal workday/workweek without interference from psychological symptoms." *See* [*Doc. 19* at 10] (citing *Doc. 12-3* at 24-25 and *Doc. 12-12* at 49). The Court finds that this contention is unavailing because Dr. Robinowitz' Section III conclusion does not account for all of the moderate limitations he found in Section I. *Compare* [*Doc. 12-12* at 47-48] *with id.* at 49. The case Defendant relies on for this contention, *Carver v. Colvin*, No. 14-5056, 2015 WL 307084, 600 Fed. Appx. 616, 619 (10th Cir. Jan. 20, 2015) (unpublished), does not support Defendant's contention because, in that case, the state agency consultant "adequately encapsulated" in Section III the findings of limitations in Section I. Here, instead, Dr. Robinowitz' conclusion in Section III that Plaintiff can perform simple work-related tasks fails to account for most of his findings of moderate limitations in Section I. Moreover, the ALJ's RFC determination does not even account for Dr. Robinowitz' conclusion at Step III because the ALJ did not limit Plaintiff to simple, routine work, and, instead, only limited Plaintiff to occasional interaction with the public in person. *See* [*Doc. 12-3* at 22-23]. As the Tenth Circuit explained in *Carver*, an ALJ cannot "turn a blind eye to moderate Section I limitations," and, "if a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in

Section I, the [Mental] RFC [Assessment] cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding."  600 Fed. Appx. at 619; *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (explaining that an ALJ must explain why even moderate limitations are rejected when they conflict with the ALJ's RFC assessment), *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (explaining that an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence") (citation and internal quotation marks omitted), and Soc. Sec. Rep. 96-8p, 1996 WL 374184 at *7 ("The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").  For these reasons, the Court finds that the ALJ erred in her consideration of the opinions of Dr. Murphy and Dr. Robinowitz and, on remand, should consider their opinions in accordance with Soc. Sec. Rep. 96-8p and other relevant law.

### C.   Plaintiff's Remaining Claim

Plaintiff's remaining claim is that the ALJ erred at step five by relying on the VE's testimony.  [*Doc. 15* at 21-25].  Because the Court finds that Plaintiff's case should be remanded for further consideration of the opinions of Dr. Murphy and Dr. Robinowitz, Plaintiff's RFC may be amended on remand, so the Court finds that it is unnecessary to reach Plaintiff's remaining claim because it may be affected by the ALJ's findings on remand.  *See Robinson*, 366 F.3d at 1085 (declining to reach the claimant's step-five claims because they may be affected by the ALJ's resolution of the case on remand) and *Lopez v. Astrue*, No. 09-2187, 371 Fed. Appx. 887, 889 and 892 n.6, 2010 WL 1172610 (10th Cir. March 29, 2010) (unpublished) (after finding that the ALJ erred by failing to articulate what weight she gave to the treating physicians' opinions, the Tenth Circuit declined to reach claims regarding the ALJ's reliance on the VE's

testimony, the ALJ's credibility assessment, and the claimant's subjective complaints of pain, because those issues may be affected by the ALJ's treatment of the case on remand) (citing *Robinson*, 366 F.3d at 1085).

## VI.   Conclusion

For the reasons stated above, the Court **FINDS** that the Commissioner's decision should be remanded to properly consider the opinions of Dr. Murphy and Dr. Robinowitz, as set forth above.

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion to Reverse and Remand for a Rehearing, With Supporting Memorandum (Doc. 15)* is **GRANTED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.  A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

_____
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**